*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CROUCH, Minors.

UNPUBLISHED
April 21, 2022

Nos. 358915; 358916
St. Joseph Circuit Court
Family Division
LC No. 2019-000838-NA

Before: BORRELLO, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-mother (mother) appeals as of right the trial court's order terminating her parental rights to SC[2] and DC pursuant to MCL 712A.19b(c)(*i*),[3] (g), and (j). Respondent-father (father) appeals as of right the same order, which also terminated his parental rights to DC pursuant to the same statutory grounds, as well as MCL 712A.19b(*l*). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The children were removed in October 2019 following an incident in which mother was under the influence of alcohol while driving SC to school and struck another parent with her vehicle after dropping SC off at school. Mother was arrested, and she was incarcerated at the time the petition was filed. Father was also incarcerated for convictions of delivery of methamphetamine. Both mother and father were adjudicated by way of pleas of admission. Mother admitted during her plea that she had an ongoing, untreated alcohol problem. She also admitted to the petition allegations that she drove while intoxicated with one or both of her children

---

[1] *In re Crouch Minors*, unpublished order of the Court of Appeals, entered October 19, 2021 (Docket Nos. 358915 and 358916).

[2] The parental rights of SC's father were also terminated by the trial court, but SC's father is not a party to this appeal.

[3] The trial court mistakenly cited MCL 712A.19b(3)(c)(*ii*), but quoted the language from MCL 712A.19b(3)(c)(*i*) and analyzed the statutory ground set forth in subparagraph (*i*).

in the vehicle, which constituted an unfit environment for her children. During his plea, father admitted to the allegations in the amended petition that he was incarcerated for delivering methamphetamine as a fourth-offense habitual offender.

Mother participated in alcohol testing throughout the case, but her success in demonstrating sobriety was inconsistent. Although she obtained multiple negative screens during the case, she also had one positive screen, three no-shows, eight refusals, and 17 "diluted" samples that were treated as positive results. Mother explained in her testimony that she determined that her tests were diluted if she consumed more than one energy drink and one coffee, so she limited her intake accordingly. However, there was also evidence introduced that diluted screens are generally caused by the intentional consumption of liquid and not by merely consuming one energy drink or cup of coffee. The trial court found that mother's diluted tests were a deliberate attempt by mother to avoid detection of alcohol in her system. Foster-care worker Audry Loosier testified that she had observed a pattern of mother's diluted screens coinciding with changes in mother's behavior such as missing therapy appointments and sleeping through parenting time visits. Loosier believed this was indicative of alcohol use. Mother had problems with diluted screens throughout the case, including shortly before the termination hearing that was held on August 25, 2021. Mother also had one admitted relapse during the case, and beer was discovered hidden in her bathroom at one point. Loosier testified at the termination hearing that mother had not demonstrated sustained, long-term sobriety and that her substance abuse was still a problem as it had been at the beginning of the case.

Mother's therapist, Lynelle Thrasher, testified at the termination hearing that she had worked with mother to address her substance abuse and pattern of unhealthy relationships with men who were abusive or substance users. Thrasher opined that mother had still not developed the insight to understand how these relationships were unhealthy for her. Thrasher believed there was a significant risk that mother would return to her old to patterns of behavior involving unhealthy relationships leading to substance use and relapse. She also described what she perceived as mother's pattern of self-sabotage where mother would relapse or begin providing diluted screens whenever it appeared that reunification with the children might be possible. Thrasher also remained concerned about mother's substance abuse issues and the potential risk of harm to the children if mother relapsed while they were in her care because mother was unable to have just one drink and could create an unsafe environment by driving while intoxicated or "passing out."

Father remained incarcerated until April 2020, when he was released on probation. Father participated in drug testing through his probation program and completed the Keeping Families Together program. According to Loosier, father struggled with his substance use. He tested positive for marijuana multiple times and admitted to Loosier that he was struggling to avoid substance use. Father relapsed with respect to methamphetamine shortly before the termination hearing, testing positive for this substance multiple times in the month preceding the termination hearing. Loosier opined that father's substance abuse issues had not been resolved.

At the conclusion of the termination hearing, the trial court found that statutory grounds to terminate mother's and father's parental rights had been established by clear and convincing evidence and that termination of their respective parental rights was in the children's best interests. The court entered an order terminating the parental rights of mother and father.

These appeals followed. Further facts necessary to the resolution of the issues presented will be discussed below.

## II. DOCKET NO. 358915

In Docket No. 358915, mother argues that the trial court clearly erred by finding that there were statutory grounds for termination and that termination of her parental rights was in the children's best interests.

This Court reviews for clear error the trial court's factual findings and its determinations on the statutory grounds for termination and the children's best interests. *In re White*, 303 Mich App 701, 709, 713; 846 NW2d 61 (2014). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Kaczkowski*, 325 Mich App 69, 74; 924 NW2d 1 (2018) (quotation marks and citation omitted).

Before terminating a respondent's parental rights, the trial court must find that the petitioner established at least one statutory ground for termination by clear and convincing evidence. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); MCL 712A.19b(3).

In this case, the trial court found that termination of mother's parental rights was supported by MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide as follows:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

-3-

Here, the condition that led to mother's adjudication was her abuse of alcohol and related act of driving while intoxicated with one or both of her children in the vehicle. Throughout the duration of the case, which lasted almost two years, mother struggled to consistently provide screens that were negative for alcohol. There was evidence that she admitted to relapsing once and also provided various "diluted" samples for testing throughout the case, including shortly before the termination hearing. Although she claimed that the diluted samples were the unintended result of her normal liquid consumption, the trial court found this explanation to not be credible and instead credited the evidence that mother was intentionally consuming excessive liquids to dilute her samples and obscure her alcohol use. The evidence credited by the trial court included testimony that mother's diluted test samples coincided with other changes in her behavior that suggested that she was consuming alcohol. "We defer to the special ability of the trial court to judge the credibility of witnesses." *In re White*, 303 Mich App at 711.

Mother cites *In re LaFrance Minors*, 306 Mich App 713, 731; 858 NW2d 143 (2014), for the proposition that "drug use alone, in the absence of any connection to abuse or neglect, cannot justify termination solely through operation of the doctrine of anticipatory neglect." However, those are not the factual circumstances of this case. Mother's abuse of alcohol led her to drive while intoxicated with one or both of her children in the vehicle, which resulted in her arrest and a criminal conviction. That incident demonstrated the risk of harm to the children as a result of mother's alcohol abuse and, as mother admitted at adjudication, created an unfit environment for the children. Because the evidence reflects that mother continues to struggle with alcohol abuse, there is a very real risk that the children could be subjected to a similar risk of harm if in the care of mother while her alcohol abuse is still a problem. Contrary to mother's argument, this case does not involve a situation of drug use without any connection to child neglect.

Accordingly, the trial court did not clearly err by finding that clear and convincing evidence supported termination under MCL 712A.19b(3)(c)(*i*). Based on the same evidence, along with the evidence that mother still had not developed sufficient insight regarding her pattern of unhealthy relationships with men who were abusive or substance users, the trial court also did not clearly err by finding that MCL 712A.19b(3)(j) had also been proven. We note with respect to MCL 712A.19b(3)(g) that the trial court neglected to make any finding that mother was financially able to provide proper care and custody as required by the statutory language. However, to the extent this was error, it was harmless because only one statutory ground is necessary to support termination. *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000). Because we are not left with a definite and firm conviction that a mistake has been made, the trial court did not clearly err by finding that there was a statutory basis for terminating mother's parental rights to both children. *In re Kaczkowski*, 325 Mich App at 74.

Next, mother argues that the trial court clearly erred in finding that termination was in the children's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012); see also MCL 712A.19b(5) ("If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.").

At the best-interest stage, the trial court's focus must be on the child rather than the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). The trial court is permitted to consider a wide range of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted).

The trial court concluded that termination of mother's parental rights was in the best interests of each child after considering several factors. The trial court specifically found that there was not an "appropriate established bond" between DC and mother, noting evidence that mother admitted that DC had a stronger bond with the foster family than with her. The trial court also found that there was a bond between mother and SC but that it was not a positive one for SC because SC and mother treated each other more like best friends and SC often took on the role of parenting DC instead of mother. Additionally, the trial court found that both children need stability and permanency given their respective ages of 10 and two years old and that there was a strong likelihood of adoption for both children.

The trial court's findings were supported by the record evidence. At the termination hearing, infant mental health specialist Heather Decastro testified that DC had a strong, secure bond with his foster parents and that DC's relationship with mother was not as strong. Mother admitted to Decastro that she thought it was in DC's best interest to remain with his foster parents. Decastro also testified that she had observed SC during mother's parenting time and that SC often assumed the parenting or caregiving role and took responsibility for DC's safety. Furthermore, Decastro provided testimony about the children's needs for permanency and stability in a home where their needs were given priority, especially considering the length of time the children had been in foster care. There was testimony from Loosier indicating that SC viewed mother as her best friend and that mother did not adequately provide safety and structure for SC. Loosier also noted the lack of a nurturing connection between mother and DC.

The nature of mother's appellate argument is somewhat difficult to decipher with precision because she does not appear to actually contest any of the trial court's best-interest findings. Instead, mother seems to argue, without any supporting legal authority, that the trial court effectively weakened the bond between her and her children by conditioning parenting time on maintaining negative alcohol test results. However, mother fails to acknowledge her responsibility for positive test results, missed drug screens, and diluted samples. Nonetheless, as discussed above, the trial court's best-interest findings were supported by the record. We are not left with a definite and firm conviction that a mistake was made and we therefore discern no clear error. *In re Kaczkowski*, 325 Mich App at 74.

We affirm the trial court's order terminating mother's parental rights to both children.

### III. DOCKET NO. 358916

In Docket No. 358916, father argues that his parental rights should not have been terminated because petitioner failed to make reasonable efforts to reunify him with DC.

The record reflects that father was incarcerated at the beginning of the case and remained incarcerated until April 2020, at which time he was released and placed on a tether in Macomb County. Father moved to St. Joseph County, where this child-protective proceeding was being conducted, in December 2020. He remained on probation at that time. Father was participating in drug testing both while he was on probation in Macomb County and through his probation after moving to St. Joseph County. He also completed the Keeping Families Together program with Decastro. However, father failed to adequately follow through with obtaining the recommended substance abuse treatment, despite his discussions with Loosier about the necessity of this treatment. By the time of the termination hearing, father had finally scheduled an appointment for these services after initially delaying in seeking out the proper substance abuse treatment. Father claimed to have completed a substance abuse treatment program in Macomb County, but he never provided Loosier with documentation she requested from him to verify that claim. Loosier was able to verify through her own investigation that father attended five appointments for substance abuse treatment in Macomb County. It was also recommended that father attend AA or NA and, although he claimed to have done so, he failed to produce any verification.

Subject to certain limited exceptions that need not be discussed for purposes of this case, the DHHS must make reasonable efforts to reunify a family before it seeks to terminate parental rights. *In re Hicks/Brown*, 500 Mich 79, 85 & n 4; 893 NW2d 637 (2017); *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005); MCL 712A.19a(2); MCL 712A.18f(3)(b) and (c). "The state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). In general, this Court reviews a trial court's finding "that reasonable efforts were made to preserve and reunify the family" for clear error. *In re Fried*, 266 Mich App at 542-543. However, as father acknowledges on appeal, he did not challenge the reasonableness of petitioner's reunification efforts in the trial court and this issue is unpreserved. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012).

Here, father complains about the adequacy of the reunification efforts provided by the DHHS, particularly early on in the case while father was incarcerated. However, father's argument ignores the services that were provided once he was released on probation and the crucial fact that he failed to produce requested documentation and verification of services in which he claimed to have engaged. Father also does not appear to account for his failure to timely follow through with obtaining recommended services despite multiple reminders from the caseworker and his failure to consistently provide negative drug screens that would have shown that he benefitted from those services. Respondents in child-protective proceedings have "a commensurate responsibility" to participate in and show benefit from proffered services. *In re Frey*, 297 Mich App at 248. Under these circumstances, father has not demonstrated that his inability to rectify his substance abuse problem is attributable to a lack of reasonable efforts by the DHHS. *In re Fried*, 266 Mich App at 542-543. Unlike the circumstances in *In re Mason*, this case does not involve a situation where the DHHS completely failed to facilitate father's participation or abandoned its duty to involve father in the reunification process. *In re Mason*, 486 Mich at 146. We affirm the trial court's order terminating father's parental rights.

Affirmed.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Deborah A. Servitto